UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| G & G CLOSED CIRCUIT EVENTS, LLC,<br><br>Plaintiff,<br><br>v.<br><br>EVERETT HUNTER, et al.,<br><br>Defendants. | No. 2:22-cv-2002-TLN-SCR<br><br>FINDINGS AND RECOMMENDATIONS |

Plaintiff G&G Closed Circuit Events LLC's motion for a default judgment (ECF No. 23) was heard by Magistrate Judge Barnes on June 13, 2024 and taken under submission. No defendant made an appearance. This matter was reassigned to the undersigned on August 6, 2024 (ECF No. 29) and the motion for default judgment is now before this court pursuant to Local Rule 302(c)(19). The Court hereby recommends that the motion be granted.

**BACKGROUND**

Plaintiff initiated this action by filing a complaint on November 4, 2022. ECF No. 1. Plaintiff is a California corporation in the business of distributing and licensing sporting events. ECF No. 1 at 3-6.[1]  Plaintiff's complaint alleges that it was granted exclusive rights to the nationwide distribution of the Saul 'Canelo' Alvarez v. Caleb Plant Championship Fight Program

---

[1] Page number citations such as this are to the page number reflected on the court's CM/ECF system and not to the page numbers assigned by the parties.

1

("Program"), telecast on November 6, 2021. *Id.* at ¶ 21. Plaintiff entered into sublicensing agreements with commercial entities, granting rights to exhibit the Program at their respective establishments. *Id.* at ¶ 22. Plaintiff expended resources marketing and transmitting the Program to customers. *Id.* at ¶ 24. Defendants are the owners, operators, licensees, permittees, or persons in charge of the commercial establishment doing business as Port City Sports Bar and Grill, operating at 222 N. El Dorado, Suite J, Stockton, CA 95202. *Id.* at 3. Plaintiff's complaint alleges defendants, without authorization, intercepted, received, and published the Program on November 6, 2021, in their establishment. *Id.* at 7. Based on these allegations, the complaint brings claims under 47 U.S.C. § 605 and 47 U.S.C. § 533 and state law claims for conversion and violation of the California Business and Professions Code § 17200, *et seq*. *Id.* at 6-10.

Proof of service of process on Defendant Everett Hunter ("Hunter") and Defendant Port City Sports Bar and Grill, LLC ("Port City") was filed on December 6, 2022. ECF Nos. 6 & 7. Plaintiff voluntarily dismissed Defendant Tommy Barksdale of February 6, 2023. ECF No. 8. On February 9, 2023, Plaintiff filed a request for entry of default as to Port City and Hunter. ECF No. 9. The Clerk entered default on February 9, 2023. ECF No. 10. Thereafter there was no action for four months, and Magistrate Judge Barnes entered an order to show cause why the action should not be dismissed for lack of prosecution. ECF No. 11. In response, Plaintiff stated it had not moved for default judgment due to a potential issue with whether service was proper on Port City. ECF No. 12. Judge Barnes determined there was good cause for an extension of time to effect proper service. ECF No. 13. A further proof of service as to Port City was filed on December 7, 2023, and a request for entry of default. ECF No. 16 & 17. The Clerk again entered default as to Port City on December 29, 2023. ECF No. 19. On April 3, 2024, Judge Barnes issued a Minute Order as to why the action should not be dismissed for failure to prosecute. ECF No. 19.

On April 17, 2024, Plaintiff moved for default judgment. ECF No. 23. The Motion for Default Judgment states that it was served on Defendant Hunter. ECF No. 23 at 4. The motion was heard by Judge Barnes on June 13, 2024. ECF No. 28. Attorney Thomas P. Riley appeared on behalf of the Plaintiff, and no appearance was made by a defendant. The undersigned has

reviewed and considered the audio recording of the hearing which was approximately four minutes in duration.

## LEGAL STANDARDS

Federal Rule of Civil Procedure 55(b)(2) governs applications to the court for default judgment. Upon entry of default, the complaint's factual allegations regarding liability are taken as true, while allegations regarding the amount of damages must be proven. *Dundee Cement Co. v. Howard Pipe & Concrete Prods.*, 722 F.2d 1319, 1323 (7th Cir. 1983) (citing *Pope v. United States*, 323 U.S. 1 (1944); *Geddes v. United Fin. Group*, 559 F.2d 557 (9th Cir. 1977)); *see also DirectTV v. Huynh*, 503 F.3d 847, 851 (9th Cir. 2007); *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987).

Where damages are liquidated, i.e., capable of ascertainment from definite figures contained in documentary evidence or in detailed affidavits, judgment by default may be entered without a damages hearing. *Dundee*, 722 F.2d at 1323. Unliquidated and punitive damages, however, require "proving up" at an evidentiary hearing or through other means. *Dundee*, 722 F.2d at 1323-24; *see also James v. Frame*, 6 F.3d 307, 310-11 (5th Cir. 1993).

Granting or denying default judgment is within the court's sound discretion. *Draper v. Coombs*, 792 F.2d 915, 924-25 (9th Cir. 1986); *Aldabe v. Aldabe*, 616 F.2d. 1089, 1092 (9th Cir. 1980). The court considers a variety of factors in exercising its discretion. *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986). Among them are:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel*, 782 F.2d at 1471-72 (citing 6 Moore's Federal Practice ¶ 55-05[2], at 55-24 to 55-26).

## ANALYSIS

**1. The *Eitel* Factors Favor Entry of Default Judgment**

    **a. Possibility of Prejudice to the Plaintiff**

The first *Eitel* factor contemplates the possibility of prejudice to the plaintiff if a default

judgment is not entered. *Eitel*, 782 F.2d at 1471. Prejudice can be established where failure to enter a default judgment would leave plaintiff without a proper remedy. *Pepsico, Inc. v. Cal. Sec. Cans*, 238 F.Supp.2d 1172, 1177 (C.D. Cal 2002). Here, Plaintiff has no alternative for recovering damages suffered as a result of Defendants' act of piracy. Since Defendants failed to appear in this action, denial of default judgment would leave Plaintiff no remedy for this injury. Accordingly, the first factor weighs in favor of default judgment.

### b. Merits of Plaintiff's Substantive Claims and Sufficiency of the Complaint

The second and third *Eitel* factors jointly examine whether the plaintiff has pleaded facts sufficient to establish and succeed upon its claims. *Pepsico, Inc.*, 238 F.Supp.2d at 1175 (citing *Kleopping v. Fireman's Fund*, 1996 WL 75314, at *2 (N.D. Cal. Feb. 14, 1996)). Plaintiff's motion for default judgment seeks recovery on its Section 605 and conversion claims; the elements and facts alleged in support are examined below. ECF No. 23 at 3.

#### i. Violation of 47 U.S.C. § 605

A violation of Section 605 requires that a defendant "(1) intercepted or aided the interception of, and (2) divulged or published, or aided the divulging or publishing of, a communication transmitted by the plaintiff." *Nat'l Subscription Television v. S & H TV*, 644 F.2d 820, 826 (9th Cir. 1981). Since the 1984 amendments to Section 605, communications protected by the statute include satellite television signals. *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 926 (9th Cir. 2006). Where direct evidence of a defendant's satellite signal piracy is unavailable, circumstantial evidence may suffice. *Id.*

Here, Plaintiff alleged and presented evidence of exclusive ownership of the distribution rights to the Program. ECF No. 23-3, Affidavit of Nicolas Gagliardi, at ¶ 3. Plaintiff has provided evidence that Defendants were never granted a sublicense to the Program. *Id.* An investigator visiting Port City on November 6, 2021, witnessed the Program being broadcast on a television within the establishment. ECF No. 23-2 at 2. Specifically, the investigator described that there were approximately 8 televisions and only one, above the bar, was broadcasting the Program. *Id.* The investigator viewed one of the undercard bouts between Rey Vargas and Leonardo Baez. ECF No. 23-3 at ¶ 7. Although Plaintiff does not know exactly how Defendants

intercepted the broadcast, Plaintiff contends it cannot be done "mistakenly, innocently, or accidentally" because the signal is encrypted. *Id.* at ¶¶ 9-10. Given the circumstances, it can be inferred the broadcast relied on an unlawful interception of the Program. *See J & J Sports Prods. Inc. v. Barajas*, No. 115-cv-01733-TLN-JLT, 2016 WL 1110446, at *3 (E.D. Cal. Mar. 22, 2016). Plaintiff has alleged facts meeting the elements for a claim under Section 605.

          ii. **Conversion**

A conversion claim requires that the plaintiff has "(1) ownership of or right to possess the property at time of conversion, (2) that the defendant disposed of the plaintiff's property rights or converted the property by wrongful act, and (3) damages." *Bank of New York v. Fremont General Corp.*, 523 F.3d 902, 914 (9th Cir. 2008). Here, Plaintiff has established exclusive ownership of the distribution rights to the *Program*. ECF No. 23-3 at ¶ 3. *See G & G Closed Cir. Events, LLC v. Saddeldin*, No. 1:10-CV-00062-AWI-SK, 2010 WL 3036455, at *4 (E.D. Cal. Aug. 2, 2010) (stating that exclusive distribution rights constitute a right to possession of property for purposes of conversion).

Plaintiff has shown that the defendants engaged in signal piracy when exhibiting the Program without a sublicense causing Plaintiff to suffer financial loss of the sublicensing fee. ECF No. 23-3. Plaintiff's investigator observed approximately 40 patrons at Port City with an approximate capacity of 50+ people. ECF No. 23-2 at 2. The rate card for the Program states a sublicensing fee of $1,250 for a capacity of 1-100 people. ECF No. 23-3 at 21. Plaintiff has established damages for conversion in the amount of $1,250. *See Joe Hand Promotions, Inc. v. Dhillon*, No. 2:15-cv-1108-MCE-KJN, 2015 WL 7572076, at *6 (E.D. Cal. Nov 25, 2015). Thus, Plaintiff has successfully established a claim for conversion.

    **c. Sum of Money at Stake**

In weighing the fourth Eitel factor, "the court must consider the amount of money at stake in relation to the seriousness of the defendant's conduct." *PepsiCo, Inc.*, 238 F.Supp.2d at 1176-77. The factor weighs against default judgment when a large sum of money is at stake. *Eitel*, 782 F. 2d. at 1472.

Here, Plaintiff seeks $5,000 in statutory damages and $20,000 in enhanced damages under Section 605.  ECF No. 23-5 at 2.  Plaintiff also seeks $1,250 in compensatory damages for conversion, an amount equal to the sublicensing fee.  *Id*.  Plaintiff is seeking a moderate sum of money; however, courts are granted discretion in awarding damages.  The undersigned declines to recommend judgment in the amount requested, as discussed below.  As such, this factor does not weigh against default judgment.

### d. Possibility of Disputed Material Facts

The fifth *Eitel* factor examines whether a dispute regarding material facts exists.  *Eitel*, 782 F.2d. at 1471-72.  Here, Defendants failed to appear, leading to an entry of default.  Given the circumstances there is no meaningful possibility for a dispute of material fact.  *See Elektra Entm't Group, Inc. v. Crawford*, 226 F.R.D. 388, 393 (C.D. Cal. 2005) ("Because all allegations in a well-pleaded complaint are taken as true after the court clerk enters default judgment, there is no likelihood that any genuine issue of material fact exists").  This factor weighs in favor of a default judgment.

### e. Whether the Default Was Due to Excusable Neglect

The sixth *Eitel* factor considers whether Defendants' failure to answer is due to excusable neglect.  *Eitel*, 782 F.2d at 1471-72.  This factor considers due process, ensuring defendants are given reasonable notice of the action.  *See Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314 (1950).

Here, Defendants were properly served with a copy of the complaint.  Additionally, the request for the Clerk to enter default (ECF No. 9) was served on Defendants.  The motion for default judgment was served on Defendant Hunter.[2]  ECF No. 23 at 4.  Under the circumstances, it is unlikely that the Defendants' actions were the result of excusable neglect.  *Shanghai Automation Instrument Co., Ltd. v. Kuei*, 194 F.Supp.2d 995, 1005 (N.D. Cal. 2001) (finding no excusable neglect because the defendants were served with the complaint, the notice of entry of

////

---

[2] "No service is required on a party who is in default for failing to appear."  Fed. R. Civ. P. 5(a)(2).

default, as well as the papers in support of the instant motion). This factor does not weigh against default judgment.

### f. Policy of Deciding Cases on the Merits

The seventh *Eitel* factor considers the courts' general disposition favoring judgments on the merits. *Eitel* 782 F.2d at 1472. The Defendants' failure to appear has made a judgment on the merits impossible. Accordingly, this factor does not weigh strongly against a default judgment. In consideration of all the *Eitel* factors, the undersigned finds the factors weigh in favor of granting Plaintiff's motion for default judgment.

## 2. Terms of Judgment

The undersigned having found default judgment is appropriate, must now address the issue of damages. After considering the Plaintiff's briefing and the record in this case, the undersigned recommends an award of statutory damages pursuant to Section 605 in the amount of $1,250, enhanced statutory damages under § 605 of $2,000, and damages for conversion in the amount of $1,250.

### a. Damages Under 47 U.S.C. § 605

Each violation of Section 605 allows a plaintiff to recover an award of statutory damages "in a sum of not less than $1,000 or more than $10,000, as the court considers just." 47 U.S.C. § 605(e)(3)(C)(i)(II). The statute further provides that enhanced damages may be awarded up to $100,000, where the court finds that "the violation was committed willfully and for purposes of direct or indirect commercial advantage or private financial gain." 47 U.S.C. 605(e)(3)(C)(ii). Courts maintain their discretion in determining the appropriate amount of damages. *Kingvision Pay–Per–View, Ltd. v. Backman,* 102 F.Supp.2d 1196, 1198 (N.D. Cal. 2000).

#### i. Statutory Damages

Plaintiff's motion for default judgment requests $5,000 in statutory damages. ECF No. 23 at 3. The Court can consider the following factors when determining statutory damages: promotional advertising by the defendant, the capacity of the establishment, the number of patrons present at the time of the broadcast, a cover charge, the number and size of televisions used for the broadcast, and whether a premium was charged on food and drink. *Integrated Sports*

*Media, Inc. v. Naranjo*, No. 1:10-CV-00445, 2010 WL 3171182, at *4 (E.D. Cal. Aug. 11, 2010). Courts may also consider whether the defendants are repeat offenders. *Backman*, 102 F. Supp. 2d at 1198. Courts weigh all factors, awarding statutory damages "according to the totality of the relevant circumstances." *G & G Closed Cir. Events, LLC v. Olvera*, No. 2:18-CV-02467 MCE AC, 2020 WL 1503376, at *3 (E.D. Cal. Mar. 30, 2020).

Here, the plaintiff has submitted evidence establishing that the Defendants advertised showing the Program on Facebook and via Stayhappening.[3] ECF No. 23-4 at 16-20. Moreover, an investigator's affidavit submitted by Plaintiff states an approximate capacity of 50+ people at the establishment and that approximately 40 people were present. ECF No. 23-2 at 2. The investigator also stated that the Program was shown on only one of eight televisions, and that the television was approximately 60-inches wide. *Id.* Plaintiff provided no evidence that Defendants imposed a cover charge, a premium on food and drinks, or that the Defendants had, prior to November 2021, been found liable for engaging in signal piracy. However, Plaintiff does point to another case involving Port City and alleged piracy in August of 2021, which resulted in a default judgment in January 2024. *See G & G Closed Circuit Events, LLC v. Port City Sports Bar and Grill*, Case No. 2:22-cv-1059-JAM-KJN. That case resulted in the entry of default judgment in the amount of $6,900 (which was comprised of statutory damages of $2,600 (twice the licensing fee amount); $3,000 in damages under § 605(e)(3)(C)(ii); and conversion damages of $1,300).

In exercising its discretion, the Court will recommend an award of statutory damages in the amount of $1,250—the amount Defendants would have paid for a license. The amount is proportional to the violation, while serving as a deterrence of future violations as Section 605 intended. In addition, it more or less aligns with statutory damages awarded in similar circumstances in this district. *See G & G Closed Circuit Events, LLC v. Barajas-Quijada*, Case No. 1:19-cv-1259 AWI JLT, 2020 WL 64782, at *5 (E.D. Cal. Jan. 7, 2020) (recommending "award of $5,600—which is twice the cost of a proper sublicense" where 54 patrons were present,

---

[3] Stayhappening.com is a website that provides information on events and activities happening in various cities.

8

defendant advertised, and collected a cover charge); *J & J Sports Productions, Inc. v. Carranza*, CASE NO. 1:15-CV-1041 TLN SMS, 2015 WL 12681674, at *2 (E.D. Cal. Dec. 29, 2015) ("plaintiff has not demonstrated any damages greater than the loss of the $1,400 licensing fee and the facts do not warrant statutory damages in excess of $1,400"); *Naranjo*, 2010 U.S. Dist. WL 3171182, at *6 (awarding $1,000 in statutory damages without enhanced damages where the capacity of the restaurant was forty, the number present ranged from 12 to 20, no admission fee was charged, and the program was displayed on a single television).

### ii. Enhanced Damages

Plaintiff also seeks enhanced damages in the amount of $20,000. ECF No. 23 at 3. Plaintiff argues that Defendants' unlawful actions were committed willfully and for financial gain. ECF No. 23-1 at 16-18. While it is true that the complaint's factual allegations are taken as true, the same cannot be said for allegations relating to damages. *Geddes*, 559 F.2d at 560 ("The general rule of law is that upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true.").

Here, Defendant offers evidence of advertising—in the form of a Facebook and StayHappening posts—to demonstrate willfulness. ECF No. 23-4 at 16-20. There is not evidence of a cover charge, or a premium on food and drinks, and in fact the advertising states there will be "drink and food specials all night," indicating that there may have been discounted items. ECF No. 23-2 at 15. According to affidavit of Plaintiff's investigator, the Program was displayed on only one of eight televisions, which somewhat undercuts the commercial advantage and financial gain component under § 605(e)(3)(C)(ii); see also *Backman*, 102 F. Supp. 2d at 1198 (noting that "there were only 16 patrons in Defendant's establishment at the time of the violation, any commercial advantage or private financial gain was minimal at best.").

However, here the establishment was fairly full, food and drink specials had been advertised, and Defendants had engaged in this unauthorized interception and broadcast of another fight three months prior. The Court finds the willfulness and "direct or indirect commercial advantage or private financial gain" component of the statute is met. The Court finds an award of $2,000 in enhanced damages is appropriate.

**b. Damages for Conversion**

Plaintiff also requests damages in the amount of $1,250 for conversion. ECF No. 23-1 at 3. As set forth above, Plaintiff has established the elements of conversion and $1,250 is the licensing fee for a venue the size of Port City. Plaintiff has established it suffered a loss of the license fee. The Court acknowledges that some courts in this District have declined to award both statutory damages and damages for conversion. *See for example Barajas-Quijada*, 2020 WL 635264 at *4 ("this Court has repeatedly declined to award damages for conversion in addition to statutory damages for the same wrong"); *J & J Sports Productions, Inc. v. Carranza*, Case No. 1:15-cv-1041 TLN SMS, 2015 WL 12681674, at *3 (E.D. Cal. Dec. 29, 2015) ("Damages awarded under section 605 sufficiently compensate Plaintiff. Additional damages for conversion are not recommended."). However, other courts in this District have reached the opposite conclusion and awarded statutory damages under § 605 and damages for the California state tort of conversion. *See for example G & G Closed Cir. Events, LLC v. Saddeldin*, No. 1:10-CV-00062-AWI-SK, 2010 WL 3036455, at *4 (E.D. Cal. Aug. 2, 2010) (awarding $40,000 in statutory damages and $800 for conversion); *Joe Hand Promotions, Inc. v. Dhillon*, No. 2:15-cv-1108-MCE-KJN, 2015 WL 7572076, at *6 (E.D. Cal. Nov 25, 2015) (awarding $4,000 in statutory damages and $750 for conversion); *G & G Closed Cir. Events, LLC v. Olvera*, No. 2:18-CV-02467 MCE AC, 2020 WL 1503376 (E.D. Cal. Mar. 30, 2020) (awarding $60,000 in statutory damages and $12,500 for conversion). The court finds it is appropriate to award conversion damages in the amount of $1,250.

**CONCLUSION**

Having considered the *Eitel* factors, the undersigned finds they weigh in favor of a default judgment for Plaintiff. The undersigned finds that an award of damages in the amount of $4,500 is appropriate to compensate Plaintiff and deter future violations by Defendants.

IT IS HEREBY RECOMMENDED that:

1. Plaintiff's motion for default judgment (ECF No. 23) be GRANTED, with reductions as to the total damages sought;

////

    2. Judgment be entered in favor of Plaintiff and against Defendants in the sum of $4,500, as follows:

        a. $1,250.00 in damages pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II);

        b. $2,000.00 in damages pursuant to 47 U.S.C. § 605(e)(3)(C)(ii); and

        c. $1,250.00 in damages for Plaintiff's state tort claim for conversion.

    3. Plaintiff be ordered to submit any motion for attorneys' fees and costs within fourteen (14) days from the date of entry of judgment.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within fourteen (14) days after these findings and recommendations are filed, any party may file written objections with the court. A document containing objections should be titled "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within 14 days after service of the objections. The parties are advised that failure to file objections within the specified time may, under certain circumstances, waive the right to appeal the District Court's order. *See Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

Dated: December 12, 2024

_____
SEAN C. RIORDAN
UNITED STATES MAGISTRATE JUDGE